IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEWEY PAUL HICKSON,**

      **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　No. CIV-14-1094 LAM

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum* (*Doc. 18*), filed July 22, 2015 (hereinafter "motion"). On October 5, 2015, Defendant filed a response to Plaintiff's motion (*Doc. 23*), and, on November 3, 2015, Plaintiff filed a reply (*Doc. 26*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs.* 5 and *7*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 15*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

## I. Procedural History

On October 22, 2010, Plaintiff filed applications for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"), alleging that he became disabled on May 17, 2009. [*Doc. 15-7* at 2-8 and 9-15, respectively]. Plaintiff claimed that he became disabled due to Meniere's disease (*Doc. 15-8* at 33) and due to having no sense of smell; constant ringing in his ears; constant severe dizziness; confusion; imbalance; and vertigo (*id.* at 63). Each application was denied at the initial level on March 11, 2011 (*Doc. 15-5* at 2-5), and at the reconsideration level on July 7, 2011 (*id.* at 7-8 and 9-10, respectively). Pursuant to Plaintiff's request (*id.* at 11), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on February 28, 2013. [*Doc. 15-3* at 41-62]. At the hearing, Plaintiff was present, was represented by Lisa Mobley, and testified (*id.* at 43 and 46-58). Vocational Expert Thomas Greiner (hereinafter "VE") was also present and testified (*id.* at 43 and 58-61).

On March 14, 2013, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled through the date of the decision. [*Doc. 15-3* at 25-40]. Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 20. On September 29, 2014, the Appeals Council issued an order accepting additional evidence (*id.* at 7), which had been submitted by Plaintiff and consisted of medical source statements and medical records, designated as "Exhibits 16F, 17F and 18F." *See* [*Doc. 15-14* at 2-39]. The Appeals Council denied Plaintiff's request for review on the ground that they had "found no reason under [their] rules to review the [ALJ]'s decision." [*Doc. 15-3* at 2-5]. This decision was the final decision of the Commissioner. On December 3, 2014, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence

does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 26, 1952.  [*Doc. 15-8* at 2].   Plaintiff's past work has been as a missile crewman when he was in the military, as a carpenter both before and after his military service, and as a steel worker/boilermaker until 2009, when he stopped working.  *Id* at 5.  Plaintiff's disability claims are based on long-term buzzing/ringing in his ears, dizziness, anxiety, and depression.  *Id*. at 14.  Plaintiff claims that the buzzing in his ears causes dizziness and confusion, as well as interfering with his abilities to concentrate, lift, walk, stand, complete tasks, understand and follow instructions, and get along with others.  *Id*. at 18.   Plaintiff uses a crutch to steady himself because sudden attacks have caused him to fall, hit his head, and knock out a tooth.  [*Doc. 15-3* at 47-48].   He doesn't drive because he is afraid he will have an attack and get into a wreck  *Id*. at 49-50.   He lives alone in a trailer, rarely bathes, does not go out except for appointments, does not grocery shop, do laundry, or take trash out for pickup, and does not clean.  *Id*. at 51-52.   He sleeps on his couch, and effectively stays there all day as well, because being seated on the couch will keep him from falling if he has an attack.  *Id*. at 52-53.   The ringing in his ears is constant, especially in his right ear, and medication "doesn't help at all."  *Id*. at 57-58.  He has attacks approximately once a day, which usually last about an hour, and he has no warning of impending attacks.  *Id*. at 53-54.

Plaintiff's medical records include:  Hospital treatment records from the New Mexico Health Care System (hereinafter "HCS") from August 2008 to October 2010 (*Doc. 15-12* at 2-37); medical records from the Veteran's Administration Health Care System (hereinafter "VA") from 2008 to 2010 (*Doc. 15-10* at 10-47), and from April to August, 2012 (*Doc. 15-13* at 27-51);

5

Physical RFC Assessment by David P. Green, M.D. dated January 6, 2011 (*Doc. 15-12* at 43-50); Mental RFC Assessment by Donald Gucker, Ph.D. dated February 17, 2011 (*Doc. 15-12* at 55-57); Psychiatric Review Technique by Donald Gucker, Ph.D. dated February 17, 2011 (*Doc. 15-13* at 2-14); Consultative Examination Report by David LaCourt, Ph.D. dated January 15, 2011 (*Doc. 15-12* at 38-40).  In addition, at the Appeals Council level, Plaintiff submitted additional medical records from Raymer W. Seavers, M.D. and the VA, dated from July 17, 2012 to August 27, 2013.  [*Doc. 15-14* at 3-39].[1]  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of May 17, 2009.  [*Doc. 15-3* at 27].  At step two, the ALJ found that Plaintiff has the following severe medically determinable impairments:  tinnitus and mild hearing loss.  *Id.* at 28.  The ALJ also found that Plaintiff "has depression, which is considered a 'non-severe' impairment."  *Id*.  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  *Id.* at 30. In so finding, the ALJ also found that, regarding Plaintiff's tinnitus, "there is no evidence of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing with disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests and hearing loss

---

[1] These documents were made a part of the administrative record by the Appeals Council on September 29, 2014.  [*Doc. 15-3* at 7].  Some of the documents, including Dr. Seavers' medical source statements, post-date the ALJ's decision.  The implications of that fact are discussed in Part V(B) of this decision.

established by audiometry." *Id.* With respect to Plaintiff's hearing loss, the ALJ found that "there is no medical evidence of hearing loss not treated with cochlear implantation. There is no evidence of average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear. Nor, is there medical evidence of a word recognition of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyliabic [sic] words." *Id*.

Before step four, the ALJ determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] requires the assistance of a single crutch when walking; he must avoid exposures to more than moderate noise levels, to vibrations, and to hazardous conditions including unprotected heights and dangerous moving machinery; and he should not be required to drive." *Id*. In support of the RFC finding, the ALJ found that "[Plaintiff]'s medically determinable impairments might be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [*Doc. 15-3* at 31]. The ALJ also adopted the opinions of the "State agency medical consultants who determined on January 6, 2011, that the [Plaintiff] had no exertional limitations," referencing Exhibit 6F.[2]  *Id*. at 33.

---

[2] There is only one Physical RFC Assessment identified as Ex. 6F and dated January 6, 2011 in the transcript, which was provided by David P. Green, M.D., a non-examining source. *See* [*Doc. 15-12* at 43-50].

7

At the fifth and final step, the ALJ noted that Plaintiff was born on October 26, 1952 and was 56 years old on the claimed disability onset date,[3] which is defined as an individual of advanced age.[4]  [*Doc. 15-3* at 34].  The ALJ noted that Plaintiff has at least a high school education[5] and is able to communicate in English, and stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills."  *Id*.  The ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with the [Plaintiff]'s age, education, work experience, and [RFC]," and the VE testified that such an individual "would be able to perform the requirements of representative occupations," including dining room attendant (DOT[6] 311.677-018) or bartender helper (DOT  312.687-010), but that availability of dining room attendant jobs would be reduced by 50 percent due to Plaintiff's use of a crutch when walking.[7]  *Id*. at 34-35.  The ALJ stated that

---

[3] Plaintiff is now 63, and was 60 at the time of the ALJ hearing.

[4] *See* 20 CFR 404.1563 and 416.963 (defining "advanced age" as "age 55 or older").

[5] In fact, Plaintiff never completed high school, but he did obtain a GED during his military service.  *See* [*Doc. 15-8* at 33; *Doc. 15-3* at 45; *Doc. 15-12* at 52.].

[6] "DOT" stands for Dictionary of Occupational Titles.

[7] Both of these representative occupations are considered "medium" work jobs.  *See* VE's testimony in [*Doc. 15-3* at 60].  The exertional requirements of "medium work" involve "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).  However, the ALJ's assessment of Plaintiff's RFC is that he has the capacity to perform work "at all exertional levels."  Thus, Plaintiff's RFC assessment also Continued...

she "ha[d] determined that the [VE]'s testimony is consistent with the information contained in the [DOT]," and concluded that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id. at 35*.  The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act from May 17, 2009 to the date of the decision.  *Id.*

## V.  Analysis

Plaintiff makes the following arguments in his motion to reverse or remand: (1) the ALJ failed to provide a function-by-function analysis of how Plaintiff's use of a crutch would affect his work-related abilities (*Doc. 18* at 2, 14-18); (2) the opinions of Raymer W. Seavers, M.D. should have been controlling pursuant to the "treating physician rule" (*id.* at 2, 18-21); and (3) in her RFC assessment the ALJ failed to properly include the opinions of consulting psychologists David J. LaCourt, Ph.D. and Donald Gucker, Ph.D. (*id.* at 2, 21-24) regarding the limiting effects of Plaintiff's depression.  In response, Defendant contends that the ALJ's decision is supported by substantial evidence (*Doc. 23* at 10-13); the opinions of Dr. Seavers, which were submitted only to the Appeals Council, do not undermine the ALJ's decision (*id.* at 15-17); and the ALJ properly discounted the opinions of Drs. Gucker and LaCourt (*id.* at 17-21).  In his reply memorandum, Plaintiff asserts that the majority of Defendant's arguments constitute *post hoc* rationalization, and that a function-by-function analysis is necessary to determine whether Plaintiff has the capacity to perform the standing and walking requirements of medium and heavy work.

---

declares him capable of both "heavy work," involving lifting of up to 100 pounds at a time and frequently lifting or carrying objects up to 50 pounds, and "very heavy work," which involves lifting of more than 100 pounds at a time and frequently lifting or carrying objects weighing more than 50 pounds.  *Id.* at § 416.967(d) and (e).

9

### A.  The ALJ's RFC Analysis

Plaintiff first contends that the ALJ failed to provide a function-by-function analysis of Plaintiff's work abilities as they are affected by his need to use a crutch.  The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.  Soc. Sec. Rep. 96-8p at *5.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id*. at *7.  The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions.  *Id*.  Because the ALJ must consider the whole record, she is prohibited from picking and choosing "among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence."  *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted).  When there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions.  *Hamlin*, 365 F.3d at 1215 (citation omitted).

Here, the ALJ found that Plaintiff suffered from two severe disabilities, tinnitus (or ringing in the ears) and "mild" hearing loss.[8]  In addition, the ALJ found that Plaintiff had depression that

---

[8] This Court can only speculate how "mild hearing loss" can be considered a "severe impairment," since such impairments necessarily significantly limit a claimant's "physical or mental ability to do Continued...

10

was not a severe impairment. However, in her RFC of Plaintiff, the ALJ included restrictions that Plaintiff requires a crutch to walk, must avoid exposure to hazardous conditions including unprotected heights and dangerous moving machinery, and should not be required to drive. None of these restrictions appears to relate to either tinnitus or mild hearing loss, but would be appropriate for someone who is prone to dizziness and vertigo, as Plaintiff testified. Thus, although the ALJ's assessment included the limitation that Plaintiff needed a crutch to walk, she neither discussed why that limitation was included in her RFC assessment, nor did she discuss the implications that such a limitation might have on Plaintiff's ability to fulfill work-related requirements.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b) [physical abilities], (c) [mental abilities], and (d) [other abilities affected by impairment] of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Soc. Sec. Rep. 96–8p, 1996 WL 374184, at *1 (July 2, 1996). *See also Quintana v. Colvin*, No. 14-CV-00930-KLM, 2015 WL 3412331, at *3 (D. Colo. May 28, 2015).[9] Here, the reasoning of

---

basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Mild hearing loss would, almost by definition, seem unlikely to do so, except in unusual circumstances. Moreover, the medical evidence appears to suggest that Plaintiff's hearing loss is at least "moderate." Thus, an audiometry exam in March 2009 indicated that Plaintiff had "moderate to moderately severe high-frequency sensorineural hearing loss in his right ear, and "mild to severe sensorineural hearing loss in his left ear." *See* [*Doc. 15-10* at 32].

[9] This Court is aware that an ALJ need not specifically justify tempering a medical source's opinions with restrictions that benefit the claimant. *See, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, the reasoning behind the ALJ's RFC assessment must be clear enough to allow this Court adequate opportunity to review it, and such review requires us to determine that correct legal standards, including a function-by-function analysis, were applied. *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir.2012) ("Where, as here, we can Continued...

the ALJ is not at all clear and, in fact, is without any stated rationale. The ALJ essentially just adopts the January 2011 Physical RFC Assessment by Dr. Green, a non-examining medical source, concluding that, despite Plaintiff's severe impairments of tinnitus and hearing loss, he is able to perform work at *any* exertional level, provided he is not exposed to noise, vibration, or hazardous machinery, and is not required to drive.[10] On the other hand, use of a crutch could very well impact Plaintiff's performance of job requirements, yet the ALJ failed to discuss the impacts of Plaintiff's need for a crutch on his RFC. The assessment of physical abilities includes "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 C.F.R. § 404.1545(b). It is difficult to imagine how someone who requires a crutch for stability could stoop, crouch or lift up to 50 pounds at a time, and frequently lift or carry up to 25 pounds, five eight-hour work days per week, let alone handle even more weight than that.[11] In any event, the ALJ's failure to identify and assess Plaintiff's use of a cane in a function-by-function analysis is legal error, and precludes an effective review of her decision by this Court.

---

follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal").

[10] In reality, the isolation of Plaintiff's residence in Reserve, located in rural western New Mexico, may make it extremely difficult, or even impossible, for him to get to a job without driving. *See* [*Doc. 15-12* at 52].

[11] These weight amounts apply to "medium work," whereas both "heavy" and "extra-heavy" work require lifting and carrying of even greater weight amounts. *See* fn. 5, *supra*. However, the ALJ's assessment of Plaintiff's RFC includes all exertional work levels, despite the restriction that Plaintiff requires the use of a crutch. Significantly, if Plaintiff's RFC restricted him to either sedentary or light work, he would be presumptively disabled under the guidelines, due to his age, education, and lack of transferable skills. *See* 20 C.F.R. § 404, Subpt. P, Appx. 2 §§ 201.00(d) and 202.00(c).

### B.   Consideration of the Post-Hearing Opinions of Dr. Seavers

Plaintiff also contends that the Appeals Council failed to properly evaluate the opinions of Plaintiff's treating physician, Dr. Seavers in concluding that there was no reason to review the ALJ's decision, and that the additional evidence submitted by Plaintiff's new counsel to the Appeals Council "does not provide a basis for changing the [ALJ]'s decision." [*Doc. 15-3* at 2-3]. Defendant contends that this Court is "without jurisdiction" to review the Appeals Council's decision to deny review, citing *Sims v. Apfel*, 530 U.S. 103, 107 (2000). However, the *Sims* case determined whether the petitioner in that case had obtained a "final decision," for purposes of exhaustion of administrative remedies (i*d*.), and does not, as Defendant suggests, hold that federal courts lack jurisdiction to review an Appeals Council's decision, on behalf of the Commissioner, that additional evidence submitted by a claimant is insufficient to grant review of an ALJ's decision. *Sims* likewise does not sanction the avoidance of a full judicial review of the administrative proceedings on the basis of finality of the ALJ's decision. At the very least, federal courts have the ability to decide whether or not subsequent evidence undermines the ALJ's decision, regardless of whether the Appeals Council issues a "decision" that it does not, or simply refuses a claimant's request for review. On this issue, the Tenth Circuit Court of Appeals has held that evidence that is submitted for the first time to the Appeals Council "becomes part of the administrative record to be considered when evaluating the [Defendant]'s decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (noting that "20 C.F.R. § 404.970(b) expressly authorizes submission of new evidence to the Appeals Council"). Furthermore, "because the [Defendant]'s decision does not become final until after the Appeals Council denies review or issues its own findings, her 'final decision' necessarily

includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id*. This Court will, therefore, consider the evidence submitted to, and accepted by, the Appeals Council as part of the Commissioner's final decision.

Defendant argues, among other issues with Dr. Seavers' opinions, that Dr. Seavers' medical records and function reports post-date the ALJ's decision and are therefore "inherently suspect," as well as "not from the period of time under consideration." [*Doc. 23* at 15]. However, Dr. Seavers has been Plaintiff's primary care physician since at least August of 2008, (*See Doc. 15-12* at 36), and during the course of their doctor-patient relationship, Dr. Seavers repeatedly noted that Plaintiff complained of "persistent tinnitus," dizziness, and vertigo. *See Id*. at 35 (8/28/08: ringing in left ear for over a year); at 32 (1/14/09: persistent tinnitus, vertigo); at 20 (9/24/10: tinnitus, vertigo); at 36 (7/17/12: persistent tinnitus, dizziness). Thus, Dr. Seavers' 2013 medical records, detailing his continuing efforts to treat Plaintiff's tinnitus, dizziness, and vertigo, relate to the entire period of time under consideration by the ALJ. Similarly, Dr. Seavers' June 2013 medical source physical assessment is necessarily based on the entirety of his medical treatment of Plaintiff, and not limited specifically to a post-hearing period. Significantly, Dr. Seavers had not submitted any such evaluations prior to the ones he provided in June 2013. Thus, there is no basis on which to determine whether his opinions had changed post-hearing, such that they might be considered "inherently suspect," as Defendant suggests. Indeed, the Appeals Council said nothing about either the veracity or timing of the additional documentation in its decision that the documents did not warrant review of the ALJ's decision.

As already noted, an RFC assessment must be based on all of the relevant evidence in the record, and must include a narrative discussion describing how the evidence supports each

conclusion. Soc. Sec. Rep. 96-8p at *5-7. The RFC assessment "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and must always consider and address medical source opinions. *Id*. Because the whole record must be considered, the decision maker is prohibited from picking and choosing "among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter*, 537 F.3d at 1265 (citation and internal quotation marks omitted). Therefore, when there are multiple opinions regarding medical severity and functional ability from different sources, the decision maker must explain the weight given to each source's opinions. *Hamlin*, 365 F.3d at 1215 (citation omitted).

Only Dr. Seavers, Plaintiff's treating physician, and Dr. Green, a non-examining consultant, provided opinions of Plaintiff's physical functionality, and only one of those opinions was available to the ALJ. Suffice it to say that the opinions are nearly diametrically opposed. In such cases, the treating source rule would ordinarily provide that Dr. Seavers' opinions are entitled to greater weight. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(c). That Dr. Seavers' opinions, which certainly do not support the Plaintiff's assessed RFC, were not considered by the ALJ in connection with her assessment effectively renders that decision without substantial evidentiary support and, therefore, subject to remand for reconsideration of the entirety of the evidence.

### C.   The ALJ's Consideration of the Opinions of Drs. LaCourt and Gucker

Because this case is being remanded for reconsideration of the evidence with respect to Plaintiff's RFC, the Court need not specifically address Plaintiff's argument that the ALJ improperly ignored the mental functionality assessments of Drs. LaCourt and Gucker in making her assessment. This Court expects that those opinions will be reexamined in the course of

reevaluating *all* of the medical evidence, as is required by Soc. Sec. Rep. 96-8p at *7 ("RFC assessment must always consider and address medical source opinions").

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded for further proceedings, including proper consideration of: (1) the opinions of Drs. Seavers with respect to Plaintiff's limitations, in compliance with applicable legal requirements, as set forth above; and (2) a function-by-function analysis of Plaintiff's work-related abilities and how they may be affected by his need to use a crutch.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 18)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**